UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DONOVAN DAVIS, JR.**, <br><br>          Plaintiff, <br><br>     v. <br><br> **EPHRAIM WERNICK**, <br><br>          Defendant. | Case No. 19-cv-3327 (CRC) |

## MEMORANDUM OPINION

Federal inmate Donovan Davis, Jr., proceeding *pro se*, has sued former Assistant United States Attorney Eprhaim Wernick for allegedly ordering the destruction of a laptop computer belonging to Davis following the conclusion of Davis's criminal fraud prosecution. Davis alleges that Wernick's actions deprived him of property in violation of the Due Process Clause of the Fifth Amendment and related Constitutional provisions. He seeks monetary damages. Wernick moves to dismiss the complaint, arguing that Davis has stated neither a recognized Bivens action nor, in the alternative, a viable tort claim. The Court agrees and will grant the motion.

**I.   Background**

The Court draws the following background from Mr. Davis's November 2019 complaint unless otherwise noted. Mr. Wernick presumably contests many of the allegations.

A jury convicted Davis of federal fraud offenses in 2015 and he is currently serving a lengthy prison sentence. See Davis v. Federal Bureau of Investigation, No. 18-cv-0086, 2019 WL 2870729, at *1 (D.D.C. July 3, 2019) (Cooper, J.); Compl. at 1. Davis alleges that in 2008 he relinquished a personal laptop to the United States Secret Service. Compl. at 2. That laptop purportedly contained "trade secrets, personal images, and intellectual property" as well as "data

[which] showed that" former AUSA Wernick "and others conspired to deceive a federal district court" during the course of Davis's prosecution. Compl. at 2, 4. In the ensuing years, the laptop remained in the custody of the Secret Service and was never searched or returned to Davis. Compl. at 3. Davis maintains that the Secret Service was instructed not to dispose of the laptop while the direct appeals of his conviction were still pending. Compl. at 4. Wernick nevertheless ordered the destruction of the laptop in 2017, according to Davis, "in order to conceal Mr. Wernick's participation in obstructing justice." Compl. at 4.

Davis contends that Wernick's direction to destroy the laptop constituted a deprivation of property without due process of law in violation of the Fifth Amendment of the United States Constitution. Compl. at 5–6.[1] Davis requests "actual, compensatory, and consequential damages" and claims that the "cost of recovering and reproducing the destroyed property exceeds $100,000." Compl. at 6–7. Wernick moves to dismiss the case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.

## II. Legal Standards

In order to survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In

---

[1] The complaint's section labeled "Constitutional Duty of Care Claim Against Ephraim Wernick" alleges that "Mr. Wernick had a duty to ensure Mr. Davis's property was returned without damage" which was violated when the laptop was destroyed. Compl. at 7. The same is true of the complaint's section labeled "Just Compensation Claim Against Ephraim Wernick," which states that "Mr. Wernick intentionally destroyed Mr. Davis's personal property" in a manner which "prevented Mr. Davis from availing himself of the Constitution's just compensation provisions." Compl. at 6–7. As these claims assert essentially the same legal theory as Davis's due process claim (and rest on the same implied cause of action under the Constitution), the Court will address them in tandem.

deciding such a motion, the Court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which a court may take judicial notice, and matters of public record. See Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624–25 (D.C. Cir. 1997).

### III. Analysis

#### A. Potential *Bivens* Claim

Davis seeks damages against a federal officer for an alleged violation of a constitutional right and his claims do not arise out of any cause of action previously authorized by Congress. As a result, the claims must rest, if at all, on an implied constitutional cause of action such as that recognized by the Supreme Court in Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). See K.O. v. U.S. Immigration and Customs Enforcement, 468 F. Supp. 3d 350, 363 (D.D.C. 2020). And, because the Supreme Court has not recognized an implied cause of action against an individual federal officer for damages due to destruction of property in violation of the Due Process Clause of the Fifth Amendment, Davis's claims must satisfy the standards the Supreme Court outlined in Ziglar v. Abbasi, 137 S.Ct. 1843 (2017), for the recognition of new implied constitutional causes of action for damages.

Under Ziglar, 137 S.Ct. at 1859–60, a plaintiff seeking recognition of a new implied cause of action for damages under the Constitution must meet a demanding two-part test. First, courts inquire as to whether the case "presents a new Bivens context," which requires determining whether the circumstances of the case differ in a "meaningful way" from "previous Bivens cases decided by" the Supreme Court. Id. Those differences can consist of a difference in "the constitutional right at issue." Id. at 1860. If the case presents a new context, then the court asks whether any "special factors counsel[] hesitation" against recognizing the cause of

3

action.  Id. at 1857 (internal quotation marks and citation omitted).  This second "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  Id. at 1857–58.  In applying this test, Ziglar emphasized that recognizing new constitutional implied causes of action was a "disfavored judicial activity."  Id. at 1857 (internal quotation marks and citation omitted).

As explained below, Davis cannot overcome this high bar for recognition of his claims.  Nor can he salvage his claims by recasting them as torts.  The Court will therefore grant Wernick's motion to dismiss.

      *1. New context*

There can be no question that Davis's assertion of an implied cause of action based on an alleged deprivation of property in violation of the Due Process Clause of the Fifth Amendment presents a "new context" under Ziglar, 137 S.Ct. at 1859–60.  As Ziglar explained, a claim presents a new context when it raises a constitutional challenge that differs from previous Bivens cases.  Id.  The three Bivens cases the Court referenced—Bivens itself, Carlson v. Green, 446 U.S. 14, 17 (1980), and Davis v. Passman, 442 U.S. 228, 248–49 (1979)—concerned, respectively, the Fourth Amendment, the Eighth Amendment, and a due process claim alleging gender discrimination under the Fifth Amendment.  Id. at 1854–55.  The Supreme Court has not previously recognized an implied cause of action for deprivations of property under the Fifth Amendment.  See id. at 1855 (noting that "these three cases . . . represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself").  Accordingly, Davis's claims present a "new [] context" requiring the Court to consider if there

are "special factors counsel[ling] hesitation" against recognizing an implied cause of action here. Id. at 1859–60.  There are.

### 2. *Special factors counselling hesitation*

Although the Supreme Court "has not defined the phrase 'special factors counselling hesitation,'" it has explained that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Ziglar, 137 S.Ct. at 1857–58.  "[T]o be a special factor counselling hesitation, a factor must cause a court to hesitate before answering that question in the affirmative." Id. at 1858 (internal quotation marks omitted).  One special factor singled out by the Court in Ziglar was the presence of "an alternative remedial structure . . . for protecting the injured party's interest." Id. (cleaned up).  Here, the presence of at least two alternative remedial structures which could vindicate Davis's interest in his property provide just the sort of special factors counselling against recognizing a new Bivens action based on a property deprivation under the Fifth Amendment.

First, plaintiffs seeking damages for the destruction or taking of property under the Fifth Amendment may bring a claim under the Tucker Act.  See 28 U.S.C. § 1491; Maine Cmty. Health Options v. United States, 140 S. Ct. 1308, 1328 n.12 (2020) (discussing implied causes of action and noting that "[a]lthough there is no express cause of action under the [Fifth Amendment's] Takings Clause, aggrieved owners can sue through the Tucker Act under our case law" (citations omitted)); Monarch Ins. Co. of Ohio v. D.C., 353 F. Supp. 1249, 1252–53 (D.D.C. 1973) aff'd sub nom. Aetna Ins. Co. v. United States, 497 F.2d 683 (D.C. Cir. 1974) (noting that "if plaintiff's claim of denial of due process arises solely from its claim of a taking without just compensation, plaintiff has a recognized cause of action under the Tucker Act . . .")

(internal quotation marks omitted). Although such a suit must be brought against the United States, rather than an individual officer, see, e.g., Van Drasek v. Lehman, 762 F.2d 1065, 1069–70 (D.C. Cir. 1985), it suffices for the special factors analysis that the alternative remedy in question vindicate the plaintiff's interest, not that it render a particular defendant liable for damages, see Ziglar, 137 S.Ct. at 1858, 1862–63.

Ziglar further observed that the presence of a more limited alternative remedial scheme may provide a negative inference as to Congress's intent to create a damages action against a federal officer, as the balance of policy considerations in creating such an action is for Congress to properly strike. See id. at 1865 (noting, in the context of prisoner abuse claims, that "legislative action suggesting that Congress does not want a damages remedy is itself a factor counselling hesitation"). Congress's adoption of a more particular form of relief for property deprivations thus counsels against implying a damages remedy. See id.; Wilson v. Libby, 535 F.3d 697, 705–06 (D.C. Cir 2008) (observing that "[a] remedial statute need not provide full relief to the plaintiff to qualify as a special factor"); Kizas v. Webster, 707 F.2d 524, 534 n.42 (D.C. Cir. 1983) (noting that whether a district court properly implied a "Bivens-type action for damages directly from the [F]ifth [A]mendment's takings clause" turned in part on the Tucker Act's availability as an alternative remedy).

Numerous district courts considering similar claims have found the Tucker Act to provide a sufficient alternative remedial structure to defeat recognition of a new Bivens remedy for a claimed deprivation of property. See Estate of Redd v. Love, Civ. A. No. 11-0478, 2012 WL 2120446, at *7 (D. Utah June 11, 2012) (finding no Bivens remedy for Fifth Amendment takings claim arising out of seizure of certain personal property where Tucker Act "provides a statutorily defined mechanism . . . for just compensation for public takings"); Munns v. Clinton, 822 F.

Supp. 2d 1048, 1080 (E.D. Cal. 2011) (stating that "in light of the availability of alternative remedies [in the form of a Tucker Act claim] to protect Plaintiffs' interests, their [Bivens-based] Takings claim against the individual Defendants must fail"); Reunion, Inc. v. FAA, 719 F. Supp. 2d 700, 710 (S.D. Miss. 2010) ("[N]umerous cases have recognized that a plaintiff does not have an implied cause of action under Bivens for a Fifth Amendment takings claim because there is an express cause of action for such a claim under the Tucker Act" (citations omitted)); Anoushiravani v. Fishel, No. 04-212, 2004 WL 1630240, at *9 (D. Or. July 19, 2004) overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009) ("[B]ecause the Tucker Act, in coordination with the Fifth Amendment, provides an express remedy for plaintiff's takings claim against defendant . . . the court does not imply a cause of action for such claims under Bivens."). The Supreme Court has, in dicta, likewise pointed to the availability of the Tucker Act to vindicate the interests of "aggrieved owners" when discussing implied causes of action (and the lack of an "express cause of action") under the Fifth Amendment's Takings Clause. See Maine Cmty. Health Options, 140 S. Ct. at 1328 n.12.

Second, plaintiffs like Davis whose property is seized for "use[] in a [federal] criminal prosecution" may file a motion for its return under Federal Rule of Criminal Procedure 41(g). See United States v. Price, 914 F.2d 1507, 1511 (D.C. Cir. 1990) (internal quotation marks omitted) (citing Fed. R. Crim. P. 41(g)). Indeed, Davis has previously availed himself of this mechanism, though not with respect to the laptop at issue here. See United States v. Davis, 789 F. App'x. 105, 106–108 (11th Cir. 2019) (seeking the return of seized hard drives). And a court in this District has found that the availability of a virtually identical District of Columbia criminal rule foreclosed recognition of new Bivens cause of action based on the government's retention of the plaintiff's personal property. Leyland v. Edwards, 797 F. Supp. 2d 7, 10–11

(D.D.C. 2011); see id. at 10 n.5 (noting that "the D.C. Superior Court generally conducts its business according to the Federal Rules of Criminal Procedure . . . and Superior Court Rule 41(g) substantially conforms to Federal Rule 41(g)" (citation omitted)). The same holds for the alleged destruction of property that roots Davis's claims. It matters not that such an avenue may be no longer available to Davis (assuming the laptop was destroyed as he claims). Congress's choice to authorize a limited mechanism which vindicates a plaintiff's interest in contesting deprivations of his property under only certain circumstances is, as explained above, strong evidence against the implication of a new Bivens action here. See Ziglar, 137 S.Ct. at 1865; Wilson, 535 F.3d at 705–06.

       3.      Davis's counterarguments

Davis's responses to Wernick's Bivens arguments are unavailing. He first argues that Bivens is irrelevant to his claims because, in his view, Wernick was not operating "in his official capacity" when he allegedly authorized the destruction of the laptop. Pl.'s Resp. at 7. Davis does not explain why an allegation of unofficial conduct would place his claims outside Bivens' ambit.[2] To be sure, the D.C. Circuit has held that Bivens claims brought against an individual *in his official capacity* are typically barred by the doctrine of sovereign immunity. See Clark v. Library of Cong., 750 F.2d 89, 103 (D.C. Cir. 1984) ("If a plaintiff seeks to recover damages from a defendant in his personal, individual capacity then there is no sovereign immunity bar" but "[s]overeign immunity . . . does bar suits for money damages against officials in their official capacity absent a specific waiver by the government."); Kim v. United States, 632 F.3d 713, 715 (D.C. Cir. 2011) (holding that "no Bivens claim is available against [IRS employees] in their

---

[2] To the extent this argument is more properly construed as going to "scope of employment," it is addressed below. See supra at III.B.

official capacities . . . ."); Perkins v. Ashcroft, 275 F. App'x. 17, 17–18 (D.C. Cir. 2008) ("[T]o the extent appellant was attempting to sue the former Attorney General in his official capacity, the action is barred by sovereign immunity . . . ." (citation omitted)).  The corollary of this holding is simply that a Bivens claim is typically *only* available against individuals in their personal capacity.  See Loumiet v. United States, 828 F.3d 935, 945 (D.C. Cir. 2016).  Thus, even if Davis is correct that Wernick was not operating in his official capacity, this would not move Davis's claims beyond Bivens territory.  And, as the Court has held above, the Court will not imply a Bivens-style action here.

Davis also contends that, even if the Bivens framework applies, the court should adopt the Seventh Circuit's reasoning in Wilkins v. May, 872 F.2d 190, 194 (7th Cir. 1988), which Davis says recognized a Bivens action for destruction of property.  See Pl.'s Resp. at 7.  But Wilkins did not involve a claim of property destruction.  Wilkins, 872 F.2d at 191–92.  The challenge there, rather, was to the plaintiff's alleged coercive interrogation under the Fourth and Fifth Amendments.  Id. at 191–93.  Wilkins was also decided before the Supreme Court's clarification of the "new context" and "special factors" analysis discussed above.  Compare id. at 194–95, with Ziglar, 137 S.Ct. at 1859–60.  Thus, whatever continuing vitality Wilkins has, it does not control here.

### B. Potential tort claims

Perhaps seeking to avoid the obstacles to implying a new Bivens-style cause of action, Davis appears at points to argue that he is suing Wernick in tort.  See, e.g., Pl.'s Resp. at 2.  The Court will entertain Davis's recasting of his claims in light of his *pro se* status even though it conflicts with the clear terms of the complaint, which alleges constitutional violations exclusively.  See Compl. at 5–8 (outlining Davis's claims as a "Due Process Claim[] Against

Ephraim Wernick," a "Just Compensation Claim Against Ephraim Wernick," and a "Constitutional Duty of Care Claim Against Ephraim Wernick," and identifying the issue in each claim as the "deprivation of property without due process of law," "preventing Mr. Davis from availing himself of the Constitution's just compensation provisions [] by causing the property to vanish," and a violation of "duty to ensure Mr. Davis's property was returned without damage").

Assessing Davis's putative tort claims first requires determining whether former AUSA Wernick's alleged conduct was undertaken within the scope of his employment. If it was, then any tort claims against Wernick himself would be barred because "[f]ederal employees [have] absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." Osborn v. Haley, 549 U.S. 225, 229 (2007). The United States would instead become the defendant and the claim could proceed under the Federal Tort Claims Act. See Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 419–20 (1995). That process is triggered by the submission of a certification by the Attorney General under the Federal Employees Liability Reform and Tort Compensation Act of 1988 (commonly known as the Westfall Act) that "the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose. . . .'" Id. at 420 (quoting 28 U.S.C. § 2679(d)(1)). "Upon certification, the employee is dismissed from the action and the United States is substituted as defendant." Id.

Taking no chances, the government has submitted such a certification here. See Def.'s Motion to Dismiss Ex. 1 at 1. This certification is *prima facie* evidence that the employee was acting within the scope of his employment when the alleged tort took place. Wuterich v. Murtha, 562 F.3d 375, 381 (D.C. Cir. 2009). The burden thus falls on the plaintiff to rebut this evidence. Id. State law provides the relevant legal rule regarding scope of employment, id. at 383, and the

D.C. Circuit has noted that the "scope-of-employment test [under District of Columbia law]" is applied "very expansively" in a manner "akin to asking whether the defendant merely was on duty or on the job when committing the alleged tort," Jacobs v. Vrobel, 724 F.3d 217, 221 (D.C. Cir. 2013) (quoting Harbury v. Hayden, 522 F.3d 413, 422 n.4 (D.C. Cir. 2008)) (internal quotation marks omitted).

Davis cannot rebut the government's showing here. The District of Columbia follows the Second Restatement of Agency in delineating scope of employment:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>     (a) it is of the kind he is employed to perform;
>     (b) it occurs substantially within the authorized time and space limits;
>     (c) it is actuated, at least in part, by a purpose to serve the master; and
>     (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.
>
> Schecter v. Merchants Home Delivery, Inc., 892 A.2d 415, 427–28 (D.C. 2006) (citing Brown v. Argenbright Sec., Inc., 782 A.2d 752, 758 n.8 (D.C. 2001) and Restatement (Second) of Agency (1958) § 228)).

Davis focuses on the first and third factors in the Restatement test, arguing that Wernick performed acts of a kind other than those he was employed to perform and acted solely for his own purposes rather than his employer's. See Pl.'s Resp. at 2.

Beginning with the third factor, the D.C. Court of Appeals takes an expansive approach as to whether the act in question is "actuated, at least in part, by a purpose to serve the master," in some cases finding the factor satisfied where employees committed violent assaults on customers because the employees could not be said to have acted "solely" on the basis of their private interests. See Weinberg v. Johnson, 518 A.2d 985, 990–92 (D.C. 1986) (reviewing D.C. Court of Appeals case law and noting that "job-related controvers[ies]" of the sort that "aris[e]

11

out of [a] dispute that was originally undertaken on the employer's behalf" suffice to satisfy the requirement that an act be "actuated, at least in part, by a purpose to serve the master" (internal quotations omitted)). Accepting the allegations in the complaint as true, Wernick's disposal of the laptop arose "out of [a] dispute that was originally undertaken on the employer's behalf," namely Wernick's prosecution of Davis. Id. (internal quotation marks omitted).

Davis has submitted a Supplemental Reply in an effort to rebut this showing, but it actually supports the conclusion that Wernick was acting within the scope of his employment. The Supplemental Reply cites records indicating that Wernick (and another AUSA) advised a Secret Service agent in a 2017 phone call "that the case could be closed and evidence disposed." See Pl.'s Supp. Reply at 1. The presence of another AUSA and a Secret Service agent on the call only bolsters the conclusion that Wernick was acting within the normal scope of his employment. See id. So does the content of the call. After all, conversations about case management and the disposition of evidence are the workaday reality of a federal prosecutor's job.

Davis's take on the first factor of the Restatement test—whether the conduct in question was of a kind the servant was employed to perform—fares no better. The inquiry here focuses not on the alleged tortious act but on whether the "underlying dispute or controversy" was the "kind of conduct [Wernick] was employed to perform." Council on American Islamic Relations v. Ballenger, 444 F.3d 659, 664 (D.C. Cir. 2006) (applying District of Columbia scope of employment law and holding that whether defamation alleged to have occurred during a telephone conversation was within the scope of employment turned on "whether that telephone conversation—not the allegedly defamatory sentence—was the kind of conduct [the defendant] was employed to perform.") (internal quotation marks and citation omitted). Wernick was, as

Davis concedes, empowered in the normal course to dispose of evidence from trial. See Pl.'s Resp. at 2 (noting that "Mr. Wernick might generally have authority to dispose of evidence from trial"). This brings him well within the requirement that the conduct be "of the kind he is employed to perform." See Restatement (Second) of Agency (1958) § 228(1)(a); Council on American Islamic Relations, 444 F.3d at 664 (holding that a congressman's "[s]peaking to the press during regular work hours in response to a reporter's inquiry falls within the scope of a congressman's authorized duties" (internal quotation marks and citations omitted)).

The Court thus finds that Davis has failed to rebut the *prima facie* showing that Wernick was operating within his scope of employment when the actions alleged in the complaint took place. As such, the FTCA applies to Davis's tort claims. See Gutierrez de Martinez, 515 U.S. at 419–20.

Applying the FTCA forecloses any tort claim Davis seeks to bring. Plaintiffs cannot bring an FTCA suit "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C.A. § 2675(a). This provision is jurisdictional. See Atherton v. United States, 193 F. Supp. 3d 2, 4 (D.D.C. 2016) (Cooper, J.) ("[S]ince 'compliance with [28 U.S.C.] § 2675(a)'s presentment requirement is a jurisdictional precondition to filing an FTCA suit in federal district court,' . . . subject-matter jurisdiction would not exist in an FTCA suit filed prematurely." (quoting Mader v. United States, 654 F.3d 794, 805 (8th Cir. 2011)). Although Wernick has not moved to dismiss under Federal Rule of Civil Procedure 12(b)(1), the Court may dismiss a complaint for a lack of subject matter jurisdiction *sua sponte*. Hurt v. U.S. Court of Appeals for D.C. Circuit Banc, 264 F. App'x 1 (D.C. Cir. 2008); see Odemns v. Wal-Mart Stores, Inc., No. 14-CV-1790, 2015 WL 2120634, at *1 (D.D.C. May 6, 2015) ("It is clear

beyond cavil that a court may act *sua sponte* and dismiss claims pursuant to [FRCP] 12(b)(1) for lack of subject matter jurisdiction."). In deciding jurisdictional issues under Rule 12(b)(1), as with motions under Rule 12(b)(6), courts "assume[] the truth of all well-pleaded factual allegations in the complaint and construe[] reasonable inferences from those allegations in the plaintiff's favor, but [are] not required to accept the plaintiff's legal conclusions as correct." Wiggins v. Brennan, 308 F. Supp. 3d 274, 276 (D.D.C. 2018) (Cooper, J.). However, when deciding questions under Rule 12(b)(1), the Court may look to materials outside the pleadings. Id.

Because Davis has not submitted any tort claim to the "appropriate Federal agency," he has not complied with the jurisdictional requirements imposed by 28 U.S.C.A. § 2675(a). Atherton, 193 F. Supp. 3d at 4. As a result, to the extent that Davis's complaint can be read to state a tort claim, the Court will dismiss the complaint for lack of subject-matter jurisdiction.

## IV. Conclusion

For the foregoing reasons, the Court will dismiss the complaint and close this case. An accompanying Order shall follow.

CHRISTOPHER R. COOPER  
United States District Judge

Date: January 29, 2021

14